**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD E. HAAGER, SR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04 C 6210 |
| | ) | |
| v. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| CHICAGO RAIL LINK, LLC, | ) | |
| CSX TRANSPORTATION and | ) | |
| CSX INTERMODAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case comes before this Court on Defendants' Motion to Exclude Expert Testimony of Paul F. Byrnes. This motion was referred by District Judge Mark Filip for resolution pursuant to 28 U.S.C. § 636(b)(1). An oral argument on the motion was held before this Court on October 11, 2005, and the Court announced its rulings from the bench. This memorandum opinion provides additional explanation for the Court's rulings. To the extent this memorandum opinion conflicts in any way with the Court's oral rulings, this memorandum opinion shall control.

**I. BACKGROUND FACTS**

The plaintiff, Ronald E. Haager, Sr. ("Plaintiff"), filed a four-count complaint against Chicago Rail Link, LLC ("CRL"), CSX Transportation ("CSXT"), and CSX Intermodal, Inc. ("CSXI") (collectively "Defendants") claiming that he injured his right knee while trying to

force open the inner cab door on a locomotive owned by CSXT. Counts I and II of the complaint, brought against CRL, are based upon the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, and the Federal Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701 *et seq.* Count III, brought against CSXT, and Count IV, brought against CSXI, are both negligence claims. All four counts arise from the same incident and are premised on the same allegations of wrongdoing.

On March 29, 2004, Plaintiff was employed by CRL as a locomotive engineer. He was assigned to perform switching work using locomotives owned and maintained by CSXT. The work transpired at the Bedford Park intermodal terminal operated by CSXI. When Plaintiff attempted to open the front engine cab door on a locomotive, CSXT 4767, with a broken door handle or latch mechanism, he injured his right knee. Plaintiff was diagnosed with a torn medial meniscus and had an arthroscopic procedure performed.

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, Plaintiff disclosed to Defendants the identity of his expert witnesses along with written reports, prepared and signed by the experts, disclosing the opinions each expert witness will offer, the information considered by the witness in forming the opinions, the qualifications of the witness, and other relevant information related to the witness' testimony. Paul F. Byrnes ("Byrnes") was included on the expert witness list. On his curriculum vitae, Byrnes describes himself as a "consultant/attorney at law."

From 1970 through 1989, Byrnes worked as a locomotive engineer. He then attended the University of Colorado where he received his bachelor of science degree in 1993.

Following his undergraduate studies, Burns enrolled in the University of Colorado School of Law and received his juris doctor in 1996. During law school, Byrnes spent three more years working as a locomotive engineer. After law school, Byrnes worked as an associate at a law firm for one year. He spent the next two years working at three different firms as a consultant or legal advisor. Then, in 1998, Byrnes joined the Federal Railroad Administration ("FRA"), which is an agency within the United States Department of Transportation. He worked as a trial attorney at the FRA until 2001. Following the FRA, Byrnes returned to Colorado and became an associate at a law firm. He worked in the litigation department of the law firm until 2003. As noted above, Byrnes is now a consultant/attorney at law.

In his expert opinion report, Byrnes gives ten opinions on the case. Those opinions gave rise to this motion by Defendants.

## II. LEGAL STANDARDS

The leading case addressing the admissibility of expert testimony is *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court stated that a district court has a "gatekeeping role" of ensuring that an expert's testimony is both reliable and relevant. *Id.* at 597. In the Seventh Circuit, the principles set forth in *Daubert* and Federal Rule of Evidence 702 ("Rule 702") specifically govern the admission of expert testimony. *Smith v. Ford Motor Co.*, 215 F.3d 713, 717 (7th Cir. 2000). Rule 702 mandates that expert testimony must satisfy the following standard:

If scientific, technical, or other specialized knowledge will assist the trier of fact

3

> to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. Preliminary questions concerning the qualifications of an expert witness or the admissibility of evidence are determined by the court. FED. R. EVID. 104(a). The party that proffers an expert's testimony bears the burden, by a preponderance of proof, of establishing its admissibility. *Dukes v. Illinois Cent. R. Co.*, 934 F. Supp. 939, 946 (N.D. Ill. 1996). Therefore, this Court must determine if Byrnes' expert testimony is both reliable and relevant. *Kunz v. City of Chicago*, 2004 WL 2980642, at *5 (N.D. Ill. Dec. 23, 2004).

### III. DISCUSSION

**A. Reliability of Expert Testimony**

**1. Expert's Qualifications**

An expert's reliability depends upon both the qualifications of the expert and the methodology used by that expert. *Smith*, 215 F.3d at 718; *Kunz*, 2004 WL 2980642 at *5. An expert's qualifications, however, need not be based on academic pedigree alone. *Kunz*, 2004 WL 2980642 at *5. Practical experience and training may serve as proper bases of expertise. FED. R. EVID. 702 (stating that a witness can be qualified as an expert through "knowledge, skill, experience, training, or education."); *Tysus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996) (concluding that "genuine expertise may be based on experience or training").

4

In the instant case, Byrnes possesses over twenty years of experience working as a locomotive engineer. He spent nine years with the Illinois Central Railroad Company in Chicago, Illinois; twelve years with the Atchison, Topeka & Santa Fe Railway Company in Denver, Colorado; one year with Amtrak in Seattle, Washington; and three years with the United States Department of Transportation's Transportation Technology Center in Pueblo, Colorado. In addition to Byrnes' significant practical experience, he worked as a consultant for two years advising on railroad operation issues. Byrnes also spent three years with the FRA in Washington D.C. as an attorney.[1] Presently, Byrnes works as a consultant and attorney and has testified about or been deposed on railroad issues in multiple cases in the past four years.

Other circuits have found that a locomotive engineer with significant practical experience qualifies under Rule 702 as an expert. *E.g., Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 830 (9th Cir. 2001) (finding that a locomotive engineer with 27 years of experience and court-tested qualifications in other cases was qualified professionally to testify). In light of Byrnes' extensive practical experience as a railroad locomotive engineer, the Court concludes that Byrnes is qualified as an expert.

**2.     Expert's Methodology**

In addition to the expert being qualified, Rule 702 requires that expert testimony be

---

[1] The question of how much of Byrnes' legal background can be revealed to the jury is left to the discretion of District Judge Filip. This Court, however, sees no reason why an expert's relevant background should not be disclosed.

"based upon sufficient facts or data, ... is the product of reliable principles and methods, and ... the [expert must apply] the principles and methods reliably to the facts of the case." FED. R. EVID. 702. When considering if the methodology employed by the expert is reliable, "the district court should not consider the 'factual underpinnings' of the testimony but should determine whether '[i]t was appropriate for [the expert] to rely on the test that he administered and upon the sources of information which he employed.'" *Smith*, 215 F.3d at 718 (quoting *Walker v. Soo Line R. Co.*, 208 F.3d 581, 586-587 (7th Cir. 2000)).

In formulating his opinions, Byrnes reviewed several documents from a variety of sources, including the following: court papers filed by the parties; March 29, 2004 CSXI On Vehicle Incident Report; Plaintiff's Employee Personal Injury Report; Plaintiff's records of medical treatment resulting from the incident; locomotive inspection records; Locomotive Incident History for CSXT 4767; CRL Safe Practices Handbook; General Code of Operating Rules; and eleven deposition transcripts. The breadth of information Byrnes consulted in formulating his opinions constitutes "sufficient facts or data" under Rule 702. Furthermore, his opinions and conclusions stem from his personal experience in the railroad industry. While in some cases the methodology will be scientifically tested, in others "the relevant reliability concerns may focus upon personal knowledge or experience.... [T]here are many different kinds of experts, and many different kinds of expertise ... [including] experts in drug terms, handwriting analysis, criminal modus operandi, land valuation, agricultural practices, *railroad procedures*, attorney's fee valuation, and others." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (emphasis added). Therefore, Byrnes' opinions are

6

based on a reliable application of his principles and methods to the facts of this case.

**B.  Relevance of Testimony**

For expert testimony to be admissible, Rule 702 requires that the testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. In other words, the testimony must be relevant. *See Masters v. Hesston Corp.*, 291 F.3d 985, 991 (7th Cir. 2002). In the Seventh Circuit, expert witnesses are prohibited from testifying as to legal conclusions. *Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) ("The district court correctly ruled that expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible.").

In this case, Byrnes gives ten opinions. This Court will address the relevancy of each opinion. Furthermore, for those opinions found to be admissible, this Court will set forth parameters and provide guidance on the proper scope of the testimony.

**1.  Opinions 1, 2, and 3 Are Inadmissible as Not Relevant.**

Opinion 1 is not relevant because it involves a claim that is not an issue in this case. The opinion asserts, "[i]f CRL fired Mr. Hager for reporting his injury or for seeking proper medical treatment for his injury, that was conduct calculated to discourage or intimidate injured employees from receiving proper medical treatment or reporting an accident, incident, injury, or illness." (Def.'s Mot. Ex. B. at 9.) Plaintiff's complaint includes four counts. Two of the counts are negligence claims and two allege statutory violations. All four counts stem from the injury plaintiff incurred trying to open the door on a locomotive with a broken door handle or latch mechanism. Not one of the four counts involves retaliatory

7

firing or intimidation. Therefore, Opinion 1 is inadmissible as not relevant.

Byrne's second opinion is not relevant because it also deals with plaintiff's termination, not an issue in the case. In the opinion, Byrnes states that if he had learned about "the termination by a covered railroad of an injured employee under circumstances similar to CRL's termination of Mr. Haager" while he was an attorney for the FRA, he would have recommended an investigation "to determine whether the railroad's actions were in violation of 49 CFR § 225.33." *Id.* Again, this case does not deal with Plaintiff's termination. Therefore, Opinion 2 is inadmissible as not relevant.

In Opinion 3, Byrnes asserts that based on the circumstances of the case, when he was with the FRA he would have considered the locomotive to be "in use" at the time of Plaintiff's injury. Because Defendants admit that the locomotive was "in use" at the time of Plaintiff's injury, Opinion 3 is not necessary and thus inadmissible.

**2. Opinions 4 and 5 Are Relevant and Admissible.**

Opinion 4 states, "[a] locomotive cab door that cannot be opened because the handle is defective is not equipped with an operable latching device." *Id.* In Opinion 5, Byrnes opines, "[a] locomotive with an inoperable locomotive cab door (i.e., a cab door that cannot be opened from either side) is not in proper condition, is not safe to operate, and presents an unnecessary danger of personal injury to the crew assigned to it." *Id.* at 10. These opinions are relevant to the issues in this case. Moreover, based on his considerable experience as a locomotive engineer, Byrnes' testimony will assist the jury and help them understand and evaluate the evidence. Therefore, Opinions 4 and 5 are relevant and admissible.

8

### 3. Opinion 6 is Inadmissible as Not Relevant.

In Opinion 6, Byrnes states, "[a]ll of 49 CFR Part 229 applies to every locomotive ready for use or in use except those sections of the rule or paragraphs of sections that specifically refer to the 'lead' or 'controlling' locomotive." *Id.* This opinion is a legal opinion and legal opinions and conclusions cannot be offered by experts in the Seventh Circuit. *Good Shepherd*, 323 F.3d at 564. Moreover, "[t]he meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court." *Bammerlin v. Navistar Intern. Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994). Because Byrnes provides a legal opinion and instructs the jury on the meaning of a federal regulation in Opinion 6, the opinion is not admissible.

### 4. Opinions 7, 8, and 9 Are Relevant and Admissible.

Byrnes opines on general railroad procedures in Opinions 7, 8, and 9. In Opinion 7, he asserts that "[p]ursuant to 49 CFR § 229.9, CSXT should have repaired the inoperable cab door on the 4767 at the first forward point where the repairs could have been made after the door latch was reported as being defective on March 22, 2004." *Id.* In Opinion 8, Byrnes states that "[p]ursuant to 49 CFR § 229.21(a), CSXT should have repaired the inoperable cab door after it was first reported on the daily inspection form before using or allowing the 4767 to be used again." *Id.* Opinion 9, a corollary to Opinions 7 and 8, explains that "[t]here is no provision in 49 CFR § 229.119(a) for the continued use in [sic] of a locomotive in the lead, controlling, or trailing position after it has been reported as having a defective door latch." *Id.*

9

These three opinions set forth what procedures, in Byrnes' opinion, a railroad should follow. Such procedures are relevant to the issues in this case. Based on Byrnes' significant experience as a locomotive engineer, he should be allowed to testify on railroad procedures. Therefore, Opinions 7, 8, and 9 are relevant and admissible under the following condition: Byrnes cannot give any legal conclusions in his testimony. If his testimony is based on certain regulations in addition to his industry experience, he may reference those regulations. Byrnes may not, however, offer an opinion that concludes or opines that such regulations were violated. Byrnes' testimony in Opinions 7, 8, and 9 is limited to opinions of railroad procedures based on his experiences in the industry and any relevant regulations.

**5.     Opinion 10 Was Withdrawn at Oral Argument.**

In light of this Court's remarks on the above opinions during oral argument, Plaintiff withdrew Opinion 10 at the argument. In Opinion 10, Byrnes asserts that "[h]ad CSXT's continued use of the 4767 after being notified of the defective cab door latch been reported to me while I was an enforcement attorney for the FRA Office of Chief Counsel, I would

have used my enforcement discretion to prosecute CSXT for violation of 49 CFR §§ 229.7; 222.9, 229.21, 229.45, and 229.119." *Id.* Opinion 10 is not relevant and it is, therefore, inadmissible. Plaintiff properly withdrew the opinion.

## IV. CONCLUSION

Byrnes possesses over twenty years of experience in the railroad industry as a locomotive engineer. This Court is primarily relying on his extensive railroad experience, not his legal experience, in reaching its conclusion that Byrnes' expert testimony meets the standards of Rule 702. Byrnes may testify about the railroad industry, what procedures and practices should be followed, and give opinions on those subjects. He may not, however, give legal opinions or conclusions that declare to the jury that a regulation or statute has been violated. For the reasons set forth in this opinion, **Defendants' Motion to Exclude Expert Testimony of Paul F. Byrnes is granted in part and denied in part.**

**SO ORDERED THIS 17TH DAY OF OCTOBER, 2005.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

| | |
|---|---|
| James T. Foley<br>HOEY & FARINA<br>542 South Dearborn Street, Suite 200<br>Chicago, IL 60605<br><br>Counsel for Plaintiff | James A. Fletcher<br>Andrew L. Hughes<br>FLETCHER & SIPPEL LLC<br>29 North Wacker Drive, Suite 920<br>Chicago, IL 60606<br><br>Counsel for Defendant |